In re WYNNE ENTERPRISES, INCORPORATED, W.F. Wynne Co., Inc., Pieco Miami, Inc., Pieco Orlando, Inc. and Pieco Palm Beach, Inc., Debtors.

WYNNE ENTERPRISES, INCORPORATED, W.F. Wynne Co., Inc., Pieco Miami, Inc., Pieco Orlando, Inc., and Pieco Palm Beach, Inc., Plaintiffs,

v.

SUBCONTRACTORS, SUB-SUBCONTRACTORS, LABORERS, MATERIALMEN AND PROFESSIONALS ON PROJECTS OF W.F. WYNNE CO., INC., Pieco Miami, Inc., Pieco Orlando, Inc. and Pieco Palm Beach, Inc., Defendants.

Bankruptcy No. 84–00343–BKC–JAG.
Adv. No. 84–0109–BKC–JAG–A.

United States Bankruptcy Court,
S.D. Florida.

March 7, 1984.

**312**

Francis L. Carter, Miami, Fla., for debtors.

Neil J. Berman, Berman & Ergas, Miami, Fla., for Dade Railroad Builders, Inc.

Larry R. Leiby, Leiby & Elder, Miami, Fla., for KDG, Inc., Builders Mart Lumber and Causley, Inc.

Richard L. Allen, Ruben, Baum, Levin, Constant, Friedman & Bilzin, Miami, Fla., for Standard Concrete.

Lauren H. Gentele, Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for Atlantic Products.

Richard E. Berman, Ruden Barnett McClosky Schuster & Schmerer, Fort Lauderdale, Fla., for Gold Coast Glass Corp.

Lawrence D. Winson, Fort Lauderdale, Fla., for LCE Corp.

William H. Benson, Benson, Ray & May, Fort Lauderdale, Fla., for Lonestar Florida Inc.

Mark F. Butler, Hollywood, Fla., for Banaszak Concrete Corp.

## ORDER GRANTING REQUEST FOR PRELIMINARY INJUNCTION OF PERFECTION AND FILING OF MECHANICS' LIENS AGAINST CO-DEBTORS

JOSEPH A. GASSEN, Bankruptcy Judge.

THIS MATTER was before the Court on March 2, 1984, proper notice having been given to the parties herein, for hearing upon Plaintiffs' request for a preliminary injunction, as set forth in their Amended Complaint for Temporary Restraining Order and Injunction of Proceedings Against Codebtors. On February 24, 1984, this Court granted, without notice, a Temporary Restraining Order (as amended by the Amended Temporary Restraining Order entered February 28, 1984, *nunc pro tunc*, as of February 24, 1984), restraining and enjoining Defendants from filing mechanics' liens against the properties listed on Exhibit "A" attached to the Complaint, and otherwise seeking to enforce their rights under Florida Statutes, Chapter 713, or under any other laws applicable hereto, against the owners of such properties, unless such lien rights would expire prior to March 5, 1984, in which event such restraint did not apply. This Court having reviewed the Court file, heard argument of counsel, considered the testimony presented, and being otherwise fully advised in the premises, finds as follows:

1. This Court has jurisdiction of this action to grant the relief sought herein under 11 U.S.C. § 105(a), 28 U.S.C. § 1471, and the Emergency Rule adopted December 22, 1982, by the United States District Court for the Southern District of Florida.

2. It appears from the record that the Debtors operate a substantial construction business, that there is a substantial likelihood of a successful reorganization within a reasonable time, and that a successful reorganization is in the public interest.

3. It further appears from the record that absent the granting of a preliminary injunction, there is a reasonable likelihood that Defendants, the subcontractors, sub-subcontractors, laborers, materialmen and professionals listed on Exhibit "A" attached to the Complaint, will file mechanics' liens against the properties listed on Exhibit "A" to the Complaint and will otherwise seek to perfect and enforce their remedies under Florida Statutes, Chapter 713, and any other laws applicable hereto, against the owners of such properties. There is a reasonable likelihood that the filing of such mechanics' liens will pressure the owners and/or their lessees to stop making progress payments to the Debtors on the Debtors' construction projects pend-

ing on such owners' properties. Should this occur, the Debtors will be unable to effectively continue to operate their businesses, since such progress payments constitute the Debtors' main source of operating revenues.

4. The Plaintiffs have no adequate legal remedy. Should the owners and/or their lessees cease making progress payments under their contracts with the Debtors as a result of the filing of mechanics' liens by the Defendants, the Debtors' efforts to effectively reorganize will be materially impaired and irreparable injury to the Debtors will result.

5. The irreparable injury to the Debtors in the absence of an injunction would outweigh any harm resulting to the Defendants if the Defendants receive adequate protection as required by Section 361 of the Code. Sections 361(1) and 361(2) state that such adequate protection may be provided in the form of periodic cash payments, or an additional or replacement lien, of equivalent value. The cash escrow fund to be established by the Debtors, together with substitute liens on all accounts receivable, inventory, machinery, equipment, other tangible personal property, and real property of the Debtors, as set forth below, provide such adequate protection to the Defendants and would thus minimize any harm that may otherwise result to the Defendants from an injunction limiting or terminating their lien rights under state law. Therefore, it is

ORDERED AND ADJUDGED as follows:

(a) A preliminary injunction is hereby entered enjoining and restraining the Defendants, their officers, directors, agents, servants, employees and attorneys from filing notices to owner and/or claims of lien against the properties listed on Exhibit "A" attached to the Complaint, and from otherwise seeking to perfect and/or enforce their rights under Florida Statutes, Chapter 713, and/or under any other laws applicable hereto, against the owners of such properties.

(b) The Debtors shall establish a cash escrow fund (the "Fund") as follows:

(i) In order to determine the amount of the Fund, the respective Defendants shall file with the Clerk of this Court not later than Friday, March 16, 1984, a notice of claim in substantially the same form required for claims of lien under Florida Statutes § 713.08, setting forth their name and address, the value of their claims (excluding attorneys' fees, costs and post-petition interest), the applicable commencement and completion dates, the date of service of notice to owner (if applicable), and a description of the property to which the claim relates. Such notice of claim shall be made under oath and notarized by a duly authorized Notary Public, but shall not be recorded and shall not be filed in any place except with the Clerk of this Court. Such claims shall be made in good faith, and all Defendants shall be subject to the same standards and penalties for making false statements as would be applicable to them under Florida Statutes, Chapter 713.

(ii) This Court shall retain jurisdiction to determine the amount, validity and enforceability of the Defendants' claims under Florida Statutes, Chapter 713, and applicable law. If and for so long as this Court's jurisdiction is terminated by operation of law, then the Plaintiffs may, at their option, file an appropriate action in a court of competent jurisdiction to seek a determination as to the amount, validity and enforceability of such claims.

(iii) The total amount of the Fund shall be equal to 118% of the total amount of claims for which notices of claims in the form described in subparagraph (b)(i) above were filed with the Clerk not later than March 16, 1984, and which are determined to be valid and enforceable under Florida Statutes, Chapter 713 and applicable law, to cover such claims and reasonable attorneys' fees, plus $100.00 for each Defendant filing a timely, valid and en-

forceable claim to apply on any Court costs which may be taxed in this action. Any claims which are filed herein after March 16, 1984, which are not in proper form, contain false statements pursuant to the standards of Chapter 713, or are otherwise determined to be invalid or unenforceable, shall not be included in the determination of the amount of the Fund; and such claims shall be deemed not to be secured claims entitled to the benefits provided herein. However, Defendants asserting such claims shall be permitted to file timely unsecured proofs of claim in these reorganization proceedings.

(iv) Francis L. Carter, Esquire, counsel for the Debtors, and William H. Benson, Esquire, counsel for Defendant, Lonestar Florida Inc. and designated representative of the Defendants, shall serve as joint escrow agents (the "Joint Escrow Agents") for the Fund. The Joint Escrow Agents shall deposit the escrow funds in such interest bearing account or accounts at the highest available rate in a federally insured bank or savings and loan association in Dade or Broward County, Florida, within the maximum insured limit for any such account.

(v) The Debtors shall turn over to the custody of the Joint Escrow Agents not later than Monday, March 5, 1984, for deposit into the Fund, the sum of $100,000.00. Each succeeding Monday after March 5, 1984, the Debtors shall turn over to the Joint Escrow Agents the collected receivables remaining on hand on such day, after making allowance for and retaining all funds necessary for operations of the Debtors in the ordinary course of business, as reflected on the bi-weekly Debtor-in-Possession reports to be filed by the Debtors, each such amount in any event not to be less than $50,000.00, until the total amount of the Fund, as determined under subparagraph (b)(iii) above, has been deposited therein.

(vi) In the event that the Debtors shall fail to turn over to the Joint Escrow Agents any amount as set forth in subparagraph (b)(v) above, either of the Joint Escrow Agents shall file a notice of such default with the Court.

(vii) Upon the deposit of the full amount of the Fund as set forth in subparagraph (b)(iii) above, the Joint Escrow Agents shall file a notice with the Court stating that such event has occurred and setting forth the amount of the Fund. The Fund shall then be subject to the further jurisdiction of this Court, except as otherwise provided herein.

(viii) If and for so long as this Court's jurisdiction is terminated by operation of law, then the Joint Escrow Agents may file an action for interpleader or other appropriate relief in a court of competent jurisdiction.

(c) In lieu of the Fund provided under paragraph (b) hereof, the Debtors may file with the Court a satisfactory surety bond in the amount set forth in subparagraph (b)(iii) above. In such event, the Joint Escrow Agents shall return all deposits then existing in the Fund, including all interest accrued thereon, to the Debtors.

(d) To further secure the positions of the Defendants determined to have valid and enforceable claims, the Debtors shall and do hereby grant to the Defendants the following substitute lien rights:

(i) a first lien on all existing accounts receivable of the Debtors and a floating first lien on all new accounts receivable arising after the date of this Order;

(ii) a second lien on all inventory of the Debtors, such lien being junior only to any first lien on such inventory which has been granted by the Debtors to Intercontinental Bank, or which may be granted by this Court to Intercontinental Bank, on the inventory of the Debtors or proceeds thereof;

(iii) a lien on all machinery, equipment and other tangible personal property of the Debtors, such lien being junior only to any existing first liens on such machin-

ery, equipment and other tangible personal property of the Debtors;

(iv) a lien on the business premises owned by the Debtors and located at 8105 W. 20th Avenue, Hialeah, Dade County, Florida, as described more particularly in Exhibit "1" attached hereto; such lien being junior only to any existing first liens on such real property.

(v) The liens set forth in subparagraphs (d)(i), (ii), (iii) and (iv) above shall have priority over all claims for administrative expenses.

(vi) Debtors shall make all payments necessary to keep all senior liens, leases and other security interests in the inventory, machinery, equipment, other tangible personal property and/or real property set forth in subparagraphs (d)(ii), (iii) and (iv) above, in current status and good standing.

(e) Upon the deposit by the Joint Escrow Agents of the total amount of the Fund as provided in subparagraph (b)(iii) above, as evidenced by the filing by the Joint Escrow Agents of the notice pursuant to subparagraph (b)(vii) above, or the filing by the Debtors of a satisfactory surety bond of equal amount under paragraph (c) above, the substitute liens established under paragraph (d) above shall be deemed by this Court, without further notice and hearing, to be fully satisfied and no longer in effect.

(f) In the event that the Debtors default in the turnover of monies to the Joint Escrow Agents for deposit into the Fund as required under subparagraph (b)(v) above, as evidenced by a notice of default filed by either of the Joint Escrow Agents pursuant to subparagraph (b)(vi) above, upon application of a party in interest and expedited notice to the parties, this Court shall hold a hearing to determine whether the preliminary injunction entered herein shall be dissolved.

### EXHIBIT "1"

### LEGAL DESCRIPTION

PARCEL I: The South 61 feet of Tract 15 and the North 89 feet of Tract 16, less the West 140 feet thereof, of CHAMBERS LAND COMPANY'S SUBDIVISION, in the Northwest ¼ of Section 26, Township 52 South, Range 40 East, according to the Plat thereof, as recorded in Plat Book 2 at page 68 of the Public Records of Dade County, Florida.

PARCEL II: Tract 16, less the North 89 feet thereof, less the East 160 feet thereof, less the South 220 feet thereof, and less the West 140 feet thereof, as measured at right angles to the South and West lines of said Tract 16 of CHAMBERS LAND COMPANY'S SUBDIVISION, in the Northwest ¼ of Section 26, Township 52 South, Range 40 East, according to the Plat thereof, as recorded in Plat Book 2 at page 68 of the Public Records of Dade County, Florida.